UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

LARRY E. BROOKS, SR.,

                              Plaintiff,

              v.

ANDREW WHITEFORD, Buffalo Police, et al.,

                              Defendants.
_____

<u>DECISION AND ORDER</u>

16-CV-6805L

## INTRODUCTION

Plaintiff Larry E. Brooks, Sr. ("plaintiff" or "Brooks") commenced this *pro se* civil rights action on December 12, 2016. In the original complaint, Brooks asserted claims against several Buffalo, New York police officers and a civilian, Talia Singletary, arising out of his arrest on November 24, 2013.

On initial review, the Court granted plaintiff's request for leave to proceed *in forma pauperis*, but held that plaintiff's false-arrest and malicious-prosecution claims would be dismissed with prejudice, unless plaintiff filed an amended complaint correcting certain deficiencies in the original pleading. (Dkt. #7.)

Brooks filed an amended complaint (Dkt. #8) on October 3, 2017. In the amended complaint, plaintiff sought to add claims against two new defendants, the City of Buffalo and former Erie County District Attorney Frank Sedita.

By Order entered on April 25, 2018 (Dkt. #10), the Court dismissed with prejudice the claims against Singletary, Sedita, and the City of Buffalo. The Court permitted plaintiff's claims

for false arrest, malicious prosecution and excessive force to proceed against the remaining five defendants, all of whom are members of the Buffalo Police Department.

Defendants have filed a motion (Dkt. #24) for summary judgment dismissing the complaint.[1]  Plaintiff has filed a response in opposition.  (Dkt. #29.)

## FACTUAL BACKGROUND

The underlying facts are summarized in the Court's prior orders (Dkt. #7, #10).  As fleshed out by the documentary evidence submitted by defendants in support of their summary judgment motion, the record shows the following.

On November 23, 2013, plaintiff went to the home of his ex-girlfriend, Talia Singletary, in Buffalo. They began arguing, and Singletary placed a 911 call to the police.

Buffalo Police Officers Andrew Whiteford, Charles Miller, Robert Danner and James McMahon responded to the call.  After the officers spoke to both plaintiff and Singletary, they arrested plaintiff and took him to the police station.  According to defendants, they arrested Brooks based on Singletary's statements that he had tried to enter her home without her consent, and based on an open, outstanding report by Singletary relating to an incident on June 9, 2013, when plaintiff allegedly kicked the front door of Singletary's residence and threatened to shoot her.  *See* Dkt. #24-4 at 11.

---

[1]Although the motion is styled a motion to dismiss under Rule 12(b)(6) or in the alternative for summary judgment, the Court treats it as a motion for summary judgment, since the moving defendants have all answered the complaint, Dkt. #11.  *See Ortiz v. Wagstaff*, No. 16-CV-321, 2019 WL 1236336, at *1 n.1 (W.D.N.Y. Mar. 18, 2019) ("A motion to dismiss pursuant to Rule 12(b)(6) must be filed before an answer is interposed") (citing *Leather v. Eyck*, 180 F.3d 420, 423 n.4 (2d Cir. 1999)).

Plaintiff was subsequently charged with Harassment in the Second Degree and Aggravated Harassment in the Second Degree (N.Y. Penal L. §§ 240.26(3), 240.30(1)). (Dkt. #24-4.)[2] It appears that the charges were based on the June 9 incident. *See* Dkt. #24-4 at 11. In satisfaction of the charges against him, plaintiff pleaded guilty to one charge of second-degree harassment. (Dkt. #24-5.)

In his amended complaint, plaintiff has not set out separate causes of action, but has set forth a narrative of events, and claims that as a result of defendants' actions, he has suffered damages due to defendants' violations of his constitutional rights, as discussed in more detail below.

## DISCUSSION

### I. Excessive Force

Plaintiff alleges that at the time of his arrest, defendant McMahon handcuffed him, then "tossed the Plaintiff head first in the police car, where the Plaintiff hit his head, shoulder and back." (Dkt. #8 ¶ 46.) Plaintiff alleges that he "cried out in pain," whereupon the officers began taunting him. *Id.* ¶ 47. Plaintiff has not disputed defendants' assertion that there was no indication of any physical injury to plaintiff when he arrived at the police station, and there is no

---

[2] New York Penal Law § 240.26(3) provides that a person is guilty of harassment in the second degree when, "with intent to harass, annoy or alarm another person ... [h]e or she engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose."

Section 240.30(1) provides that a person is guilty of aggravated harassment in the second degree when, "[w]ith intent to harass another person," he, *inter alia*, "communicates ... a threat to cause physical harm to, or unlawful harm to the property of, such person," when the actor "knows or reasonably should know that such communication will cause such person to reasonably fear harm to such person's physical safety or property ... ."

evidence that he complained of any injuries upon his arrival, or that he sought medical treatment.³

Claims that police officers used excessive force during an arrest are analyzed under the Fourth Amendment's reasonableness standard. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). In order to establish a Fourth Amendment excessive-force claim, the plaintiff must show that the actions of the arresting officer were objectively unreasonable in light of the surrounding circumstances. *Id.*

As the Supreme Court has stated, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* at 396 (internal quote omitted). To be actionable, the force used by the law enforcement officer must be both unreasonable in light of the surrounding circumstances, and "more than *de minimis*." *Antic v. New York City*, 273 F.Supp.3d 445, 458 (S.D.N.Y. 2017) (citing *Romano v. Howarth*, 998 F.2d 101, 105 (2d. Cir. 1993)), *aff'd*, 740 Fed.Appx. 203 (2d Cir. 2018). "Injuries held to be *de minimis* for purposes of defeating excessive force claims include short-term pain, swelling, and bruising, brief numbness from tight handcuffing, claims of minor discomfort from tight handcuffing, and two superficial scratches with a cut inside the mouth." *Lemmo v. McKoy*, No. 08-CV-4264, 2011 WL 843974, *5 (E.D.N.Y. Mar. 8, 2011) (internal citations omitted).

Plaintiff has alleged, essentially, that he bumped his head and shoulder area when he was being put into the police car. There is no evidence upon which a factfinder could reasonably conclude that his pain was more than momentary, or that he suffered any significant injury. In

---

³Aside from the alleged "taunting," it does not appear that any officers other than McMahon were involved in the alleged use of force.

4

his response to defendants' motion, plaintiff has done no more than repeat the allegations in his amended complaint that he "cried out in pain" when he hit his head on the car.

That is not to say that a plaintiff must show a certain quantum of injury to establish a Fourth Amendment excessive force claim. The point is that Brooks has alleged only that McMahon "tossed" him into the car, causing plaintiff to hit his head. That is not enough. That McMahon did not treat plaintiff as gently as Brooks might have wished does not give rise to a Fourth Amendment claim. *See Sow v. Fortville Police Dep't*, 636 F.3d 293, 304 (7th Cir. 2011) (officer did not use excessive force where the officer pushed the plaintiff after he was arrested, causing him to bump his head on a squad car); *Bryan v. Spillman*, 217 Fed.Appx. 882, 886 (11th Cir. 2007) (finding that force used was *de minimis* where the officer "conducted a 'rough search' of [the plaintiff's] genitals, pushed him against a patrol car and held his head down against the car") (per curiam); *Dewalt v. Carter*, 224 F.3d 607, 620 (7th Cir. 2000) (incidental bumping not enough to meet the constitutional threshold for excessive force); *Azor v. City of New York*, No. 08-CV-4473, 2012 WL 1117256, at *4 (E.D.N.Y. Mar. 30, 2012) (court found *de minimis* use of force where "defendant officers roughly grabbed [plaintiff] to search his pockets and pushed [plaintiff] on to a rear door of the Police vehicle") (internal quotation marks omitted); *cf. Phelan v. Sullivan*, 541 Fed.Appx. 21, 24 (2d Cir. 2013) (reversing district court's entry of summary judgment in favor of defendants on excessive force claim where the plaintiff alleged that the defendants "punched, kicked, and beat him while effecting his arrest, and ... nearly broke his arm").

Plaintiff has alleged in the complaint that he "experienced and is still experiencing sleepless nights, constant headaches, nervous break downs, mental anguish, stress and torment"

since the November 24 incident. Amended Complaint ¶ 74. But "[u]nder well established law, a plaintiff faced with a well-supported motion for summary judgment cannot simply rest on the allegations in his complaint; he must come forward with 'concrete evidence from which a reasonable juror could return a verdict in his favor.'" *White v. Clement*, No. 14-CV-6100, 2016 WL 5807847, at *2 (W.D.N.Y. Oct. 5, 2016) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 256 (1986)) (additional internal quote omitted). Plaintiff has not presented any evidence of his injuries, beyond that bare allegation in the complaint, nor has he shown that any alleged physical effects are traceable to McMahon's alleged use of excessive force.

In addition, even if the force used by McMahon could reasonably be considered excessive, I find that McMahon is entitled to qualified immunity, which shields public officials, including police officers, from an action for civil damages, to the extent that their challenged acts do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). *Accord Kisela v. Hughes*, 584 U.S. __, 138 S.Ct. 1148, 1152 (2018) (per curiam).

The Supreme Court has recently explained that when a court is deciding whether a defendant is entitled to qualified immunity, "the clearly established right must be defined with specificity," that the court should not "define clearly established law at a high level of generality," and that this principle "is particularly important in excessive force cases ... ." *City of Escondido, California v. Emmons*, __ U.S. __, 139 S.Ct. 500, 503 (2019). "Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue ... ." *Kisela*, 138 S.Ct. at 1153.

6

Thus, the fact that the right to be from excessive force, as a general principle, has long been clearly established is not dispositive of whether an individual defendant is entitled to qualified immunity. The question for the Court is whether a reasonable officer in McMahon's position would have known that his actions violated plaintiff's rights, in light of all the surrounding circumstances.

As explained above, I find no basis upon which a trier of fact could rationally conclude that the force used by McMahon was excessive in the first place. For all those reasons, it certainly cannot be said that his actions violated clearly established law, or that he should have known as much. *See Farkarlun v. Hanning*, 855 F.Supp.2d 906, 928 (D.Minn. 2012) (concluding that officers were entitled to qualified immunity where the evidence showed that as a result of force used during her arrest, plaintiff "sustained some bruising on her wrists, aggravated a prior ankle sprain, and suffered headaches," which constituted *de minimis* injuries) (citing *Wertish v. Krueger*, 433 F.3d 1062, 1067 (8th Cir. 2006)) (additional citation omitted). Defendants are therefore entitled to summary judgment on plaintiff's claim for excessive force.

## II. False Arrest and Malicious Prosecution

Plaintiff has also asserted claims for false arrest and malicious prosecution. These claims must be dismissed.

Establishing a claim of false arrest requires a showing that: (1) the defendants confined the plaintiff; (2) he was conscious of the confinement; (3) he did not consent to the confinement; and (4) the confinement was not otherwise privileged. *Williams v. Goodfriend*, 347 F.Supp.3d 169, 174 (W.D.N.Y. 2018). The elements of a malicious prosecution claim are: (1) the

commencement or continuation of a criminal proceeding by the defendants against the plaintiff; (2) the termination of the proceeding in favor of the accused; (3) the absence of probable cause for the criminal proceeding; and (4) actual malice. *Donovan v. Briggs*, 250 F.Supp.2d 242, 249 (W.D.N.Y. 2003).

To establish a claim of false arrest or malicious prosecution, or a civil rights violation based on either tort, a plaintiff must prove that there was no probable cause for the underlying arrest. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). Therefore, the existence of probable cause is "a complete defense" to a civil rights action arising from an arrest, whether brought under state law or § 1983. *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994).

Consistent with that principle, "the Second Circuit has adopted 'the common-law rule, equally applicable to actions asserting false arrest, false imprisonment, or malicious prosecution ... that the plaintiff can under no circumstances recover if he was convicted of the offense for which he was arrested.'" *Freire v. Zamot*, No. 14-CV-304, 2018 WL 1582075, at *5 (E.D.N.Y. Mar. 30, 2018) (quoting *Cameron v. Fogarty*, 806 F.2d 380, 387 (2d Cir. 1986)).

A conviction on any charge for which plaintiff was arrested is conclusive evidence of probable cause to arrest. *Wingate v. Gives*, 725 Fed.Appx. 32, 35 (2d Cir. 2018); *see also Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006) (concluding "that a claim for false arrest turns only on whether probable cause existed to arrest a defendant, and that it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest"); *Crawley v. City of Syracuse*, No. 17-CV-1389, 2018 WL 3716782, at *3 (N.D.N.Y. Aug. 3, 2018) ("A conviction is conclusive evidence that probable cause existed for an arrest even if the conviction is the result of a guilty

8

plea to or conviction of a lesser charge than that for which plaintiff was arrested"); *Williams*, 347 F.Supp.3d at 175 (stating that "Plaintiff's conviction, based on his guilty plea, shows that there was probable cause for his arrest and prosecution," and granting defendants summary judgment on plaintiff's claims for false arrest and malicious prosecution).

In the case at bar, plaintiff admits in his complaint that he was convicted of a charge that was brought pursuant to his arrest. (Dkt. #8 ¶ 64.) Defendants have also presented evidence that on December 12, 2003, Brooks was convicted of second-degree harassment, in connection with the June 9, 2013 incident. (Dkt. #24-5.) Defendants state that the June 9 report, which was still "open" as of November 24, formed part of the basis for Brooks's arrest.

In the amended complaint, plaintiff states that he was eventually "forced to plead guilty," Dkt. #8 ¶ 64, and he states in his affidavit in opposition to defendants' motion, "[A]fter remaining incarcerated for 19 days, ... I cop-out to the charge," Dkt. #29 ¶ 14, but he has not presented any evidence that would tend to call into question the voluntariness or validity of his plea. Brooks asserts that he was under "mental duress" at the time, but undoubtedly almost everyone facing criminal charges, and deciding whether to enter a guilty plea, undergoes some degree of stress or anguish. There is nothing in the record that Brooks was subjected to any unusually coercive circumstances that might have rendered his plea anything less than knowing and voluntary.

Plaintiff has also alleged that he was "illegally charged" because plaintiff's "name was altered in the computer by Police Officer McMahon, where the name was change [sic] from Larry E. Brooks to Larry Boyd." Amended Complaint ¶ 64.

The record shows that when plaintiff was "booked" on November 24, 2013, the Information listed his name as Larry Boyd. (Dkt. #24-4 at 11.) The Buffalo City Court's Certificate of Disposition certifying plaintiff's conviction pursuant to his guilty plea also names him as Larry Boyd. (Dkt. #24-5 at 2.)

The reason for this discrepancy is not apparent from the record. Defendant Joseph Lynch states that he has no recollection or knowledge concerning this matter, Dkt. #24-9 ¶ 9, and defendant McMahon denies plaintiff's allegation that he changed plaintiff's surname in any documents or database from "Brooks" to "Boyd." (Dkt. #24-10 ¶ 15.)[4]

In any event, there appears to be no dispute that with respect to the various charges and papers filed in connection with the underlying events, "Larry Brooks" and "Larry Boyd" were one and the same person. The facts as recited in the documents obviously relate to the same events, on the same date, involving the same people. Plaintiff does not deny that he is the person named in all these documents, and he has not explained how he was prejudiced by the use of those names or what reason defendants would have had for deliberately altering his name. Nor does it appear that he ever raised any challenges in state court concerning these matters, which are of no federal constitutional dimension.

Plaintiff's remaining allegations require little comment. He has alleged that the officers "somehow" forced or persuaded Singletary to make false accusations against him, *see* Dkt. #29 ¶ 24, but that naked allegation is not enough to give rise to a genuine issue of material fact. His amended complaint also purports to assert claims for due process and equal protection violations,

---

[4]Lynch was a lieutenant at the time of the relevant events. Plaintiff has not alleged facts showing that Lynch was present at the scene, or otherwise personally involved in those events, and Lynch states that he has no recollection of these matters. (Dkt. #24-9.)

but he has not even alleged the elements of such claims, much less presented evidence in support of them. In short, his claims are entirely without merit.

## CONCLUSION

Defendants' motion for summary judgment (Dkt. #24) is granted, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      June 21, 2019.